| | | |
|---|---|---|
| MELISSA KEARNEY | * | IN THE |
| 353 Fell Road | | |
| Rising Sun, Maryland 21911 | * | CIRCUIT COURT |
| | | |
| Plaintiff, | * | OF |
| | | |
| | * | MARYLAND FOR |
| v. | | |
| | * | HARFORD COUNTY |
| | | |
| STATE OF MARYLAND | * | |
| *Serve on Resident Agent*: | | |
| Office of the Attorney General | * | |
| 200 Saint Paul Place | | |
| Baltimore, Maryland 21202, | * | CASE NO.:_____ |
| | | |
| MARYLAND DEPARTMENT OF | * | |
| PUBLIC SAFETY AND | | |
| CORRECTIONAL SERVICES | * | |
| *Serve on Resident Agent*: | | |
| Office of the Attorney General | * | |
| 200 Saint Paul Place | | |
| Baltimore, Maryland 21202, | * | |
| | | |
| DIANE LUTZ | * | |
| 1032 Alexandria Way | | |
| Bel Air, Maryland 21014-2468 | * | |
| | | |
| and | * | |
| | | |
| JEFFREY JOSEPH COOKE | * | |
| 1909 Treeline Drive | | |
| Forest Hill, Maryland 21050 | * | |
| | | |
| Defendants. | * | |

*   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT

COMES NOW, Plaintiff, Melissa Kearney ("Kearney"), by and through her

attorneys, Shaun F. Owens, Esquire, and Schlachman, Belsky & Weiner, P.A., and

hereby sues the State of Maryland, the Department of Public Safety and Correctional

FILED 2012 AUG -7 PM 1:30 CLERK OF CIRCUIT COURT HARFORD COUNTY, MD

1

Services, Diane Lutz ("Lutz") and Jeffrey Joseph Cooke ("Cooke") and, in support thereof, does state and aver as follows:

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1.      Jurisdiction is proper pursuant to §6-101 et seq., of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

2.      Venue is proper pursuant to §6-201(a) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland as all Defendants either reside in or are employed in Harford County, Maryland.

3.      At all times relevant hereto, the Department of Public Safety and Correctional Services was and is an agency of the State of Maryland.

4.      At all times relevant hereto, the Division of Parole and Probation was and is a division of the Department of Public Safety and Correctional Services.

5.      At all times relevant hereto, Plaintiff Kearney was an employee of the Parole and Probation Division and worked in their Aberdeen office.

6.      At all times relevant hereto, Defendant Cooke was also an employee of the Parole and Probation Division in the Aberdeen Office, until his transfer to the Bel Air Office of the Parole and Probation Division subsequent to a finding in favor of Plaintiff Kearney in a sexual discrimination complaint on or about September 23, 2010.

7.      At all times relevant hereto, Defendant Lutz was also employed with the Parole and Probation Division in the Bel Air Office as a Field Supervisor II. Defendant Lutz was responsible for taking disciplinary action regarding any work-related complaints from the Aberdeen Office, including any complaints made by Plaintiff Kearney.

2

8.    At all times relevant hereto, Defendant Department of Public Safety and Correctional Services, vis-à-vis the Division of Parole and Probation, constituted a single employer and has continuously been doing business in the State of Maryland in Harford County, and has continuously had at least fifteen (15) employees.

9.    At all times relevant hereto, Defendant Department of Public Safety and Correctional Services, vis-à-vis the Division of Parole and Probation, has continuously been an employer engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e.

10.    Defendant Department of Public Safety and Correctional Services, as a governmental entity, is a "person" within the definition set forth under Title VII, 42 U.S.C. § 2000e(a).

11.    On December 30, 2008, Defendant Cooke stole Plaintiff Kearney's cellular telephone from her desk and used it to access Plaintiff Kearney's private text (SMS) messages.  This occurred in the employment facilities maintained by Defendant Department of Public Safety and Correctional Services in Aberdeen, Maryland.

12.    On January 4, 2010, at the facility referred to in Paragraph 11, *supra,* Defendant Cooke called Plaintiff Kearney a "fucking whore" and a "liar."  Defendant Cooke's comments to Plaintiff Kearney were made in reference to her failure to respond to a phone call placed by Cooke to Kearney's attention earlier that day.

13.    On January 4, 2010, Defendant Cooke also improperly accessed Plaintiff Kearney's "Facebook.com" account and changed Plaintiff Kearney's password without her knowledge, permission, or consent.  Once Plaintiff's password was changed without her permission, Defendant Cooke was the only person with the ability to access, view,

3

alter, and disseminate Plaintiff's personal information without Plaintiff's permission or consent.

14.     On February 24, 2010 at or around 5:15 p.m., Defendant Cooke entered Plaintiff Kearney's office at the facility referred to in Paragraph 11, *supra*, and cornered Plaintiff.  At that time, Defendant Cooke accused Plaintiff Kearney of making false accusations about him.  Plaintiff Kearney stated that Defendant Cooke was harassing her and requested that he leave her office.  Defendant Cooke proceeded to call her a "fucking whore" again and threatened to file fallacious charges against Plaintiff Kearney, which would ultimately deprive her, as stated by Defendant Cooke, of "a roof over [her] head." Defendant Cooke left Plaintiff Kearney's office after stating that he had access to her office key, as well as a key to her personal filing cabinet.

15.     After Defendant Cooke left, Plaintiff Kearney promptly called her co-worker, Mr. Walter Hays ("Hays"), who had only recently left the facility.  Fearing for Plaintiff Kearney's safety, co-worker Hays turned his car around, drove back to the facility, and personally escorted Plaintiff to the safety of her vehicle.

16.     At this time, Plaintiff Kearney initiated a complaint against Defendant Cooke with her supervisor, Defendant Diane Lutz.  Defendant Lutz failed to interview Plaintiff Kearney regarding the matter.  Defendant Lutz took only a written personnel statement from Plaintiff Kearney and, on April 27, 2010, Defendant Lutz concluded, without vigorous investigation, that no sexual or other type of harassment had occurred. No action was taken against Defendant Cooke.  The only result of the investigation was Defendant Lutz's conclusion that Defendant Cooke and Plaintiff Kearney had an on-

4

going conflict and that both should act in a more professional manner while at the workplace.

17.     Also on or about February 24, 2010, Plaintiff Kearney's co-worker Hays filed a complaint with his supervisors regarding Defendant Cooke's behavior towards, and harassment of, Kearney.   Defendant Lutz failed to pursue any reasonable investigation into Hays' complaint.

18.     On July 9, 2010 at around 10:15 a.m. Defendant Cooke insinuated, without evidence and with malice, that Plaintiff Kearney was having sexual relations with certain Maryland State Police officers by asking, "are they friends of yours?," in reference to two Maryland State Police officers who were visiting the Aberdeen Office of the Division of Parole and Probation. Defendant Cooke made this statement in the presence of Plaintiff Kearney's co-worker Kerri Smith ("Smith").

19.     Later that day, at around 11:45 a.m., Defendant Cooke harassed Plaintiff Kearney about her physical appearance, including the style of her clothes and the way she had done her make-up that day. As Plaintiff Kearney was leaving his presence, Defendant Cooke gave Plaintiff a hug without her consent.

20.     On July 15, 2010 at about 3:05 p.m., Defendant Cooke called Plaintiff Kearney on her cell phone and threatened that she was going to get in trouble at work because he had maliciously reported that Plaintiff was on her personal cellular phone during work hours.

21.     On July 16, 2010, after returning from an Equal Employment Opportunity seminar, Plaintiff Kearney's co-worker, Mr. Dave Farnan ("Farnan") admitted to Plaintiff that the office should have taken action regarding Plaintiff's complaints of harassment by

Defendant Cooke, but that the complaints were "blocked" by upper level management, including Defendant Lutz.

22.     On or about July 16, 2010, Defendant Cooke told Plaintiff Kearney's co-worker Eve Jacobs ("Jacobs") that Plaintiff was a "fucking whore."

23.     On September 7, 2010 at or around 4:10 p.m., Defendant Cooke, along with Mr. Kirk Everetts ("Everetts"), an agent of the Division of Parole and Probation, approached Plaintiff while she was talking to a probationer, Mr. Rodney Maenner ("Maenner"). As Defendant Cooke and Everetts walked past Plaintiff Kearney and Maenner, Defendant Cooke stated that Plaintiff Kearney "screws offenders." Defendant Cooke made this statement loud enough that it was audible to both Plaintiff Kearney and Maenner.

24.     At approximately 4:45 p.m. on September 7, 2010, Defendant Cooke walked past Plaintiff Kearney's door and, while talking on his cellular phone, he again made a statement insinuating that Plaintiff had inappropriate relations with "offenders" and with "Kirk's offender [Rodney Maenner]" in particular.

25.     On September 7, 2010, immediately following Defendant Cooke's actions as described in Paragraph 24, *supra*, Plaintiff Kearney contacted Defendant Lutz to inform her of Defendant Cooke's insulting and inappropriate statements. Although Plaintiff Kearney was audibly upset and scared while calling Defendant Lutz, Lutz's response to Plaintiff's trauma was a "giggle." Defendant Lutz did not indicate her intention to pursue any investigation into Defendant Cooke's behavior during the phone conversation with Plaintiff Kearney.

6

26.     On September 7, 2010, Plaintiff Kearney filed a police report against Defendant Cooke for the September 7, 2010 incident, which was corroborated on September 19, 2010 in a sworn statement by Maenner attesting to the fact that Defendant Cooke had verbally harassed Plaintiff Kearney while in Maenner's presence.

27.     In addition to the direct abuse of Plaintiff Kearney, Defendant Cooke's statements insinuating the existence of a sexual relationship between Plaintiff Kearney and Maenner were well known to Plaintiff's co-workers, causing Plaintiff Kearney great mental and emotional disturbance.

28.     On September 8, 2010, Plaintiff Kearney contacted Mr. George Stamas ("Stamas") at the Department of Public Safety and Correctional Services Equal Employment Opportunity Office ("EEO").

29.     On September 14, 2010, Ms. Michelle Romney ("Romney"), Executive Director of EEO confirmed receipt of Plaintiff's complaint of discrimination.

30.     On September 23, 2010, the EEO wrote to Plaintiff Kearney confirming that her sexual discrimination complaint had been substantiated and that appropriate actions were being taken by Defendant Department of Public Safety and Correctional Services.

31.     Pursuant to the EEO's substantiation of Plaintiff Kearney's sexual discrimination complaint, Defendant Cooke was transferred to the Bel Air office of the Division of Parole and Probation. The Bel Air office is within the same county as the Aberdeen office and both offices carry on extensive contact with each other.  Even though Defendant Cooke was physically transferred, Plaintiff Kearney was still not entirely free of his presence.  Pursuant to her employment duties, Plaintiff is required to

7

carry on communications with the Bel Air office and, from time to time, may have indirect contact with Defendant Cooke.

32.     Unfortunately, Plaintiff Kearney is still required to interact with Defendant Cooke on a routine basis.  Also, the situation between Plaintiff Kearney and Defendant Cooke is well known in Plaintiff's office, which has strained office relations for Plaintiff Kearney in general.

33.     On October 5, 2010, Plaintiff Kearney began intensive psychotherapy with Dr. Debra Laino. During her first appointment, Plaintiff Kearney complained that she feared for her physical safety because of Defendant Cooke's overtly harassing actions towards her.  Plaintiff Kearney further noted that she did not receive any support in her workplace, and Dr. Laino noted that Plaintiff was "clearly upset at what has been happening at work."

34.     At another psychotherapy session on October 15, 2010, Plaintiff complained that during the time Defendant Cooke was at the Aberdeen office, she felt anxious about going to work because it was an unsafe environment for her.

35.     On October 26, 2010, Plaintiff told Dr. Laino that she constantly feels worried and on her guard about work even when she is at home. Plaintiff also stated that she often wakes up in the middle of the night with feelings of anxiety about her work situation.

36.     On November 9, 2011, Plaintiff told Dr. Laino that she now feels as though she might lose her job or face other retaliation in the workplace because she was honest about Defendant Cooke's harassment and initiated an EEO investigation.

8

37.     On December 7, 2010, Plaintiff admitted to Dr. Laino that each morning while driving into work, she thinks about the harassment and name-calling to the point where she gets very anxious.

38.     On December 29, 2010, a formal claim was sent to Nancy Kopp at the State of Maryland Tresurer's Office putting the state on notice of Plaintiff Kearney's sexual harassment complaint.

39.     As late as January 4, 2011, Plaintiff told Dr. Laino that the mere mention of the name "Jeff" in her office causes Plaintiff to become anxious and lose control of her emotions.

40.     On January 21, 2011, Ronald Kammer of the Office of the Maryland State Treasurer confirmed receipt of Plaintiff's formal complaint and on February 9, 2011, Plaintiff's counsel sent supplemental information regarding the claim to the Treasurer's office.

41.     It has been over six months since a claim was initiated with the Treasurer's Office and the State has not finally denied the claim.  Thereby, Plaintiff is within her rights to bring this lawsuit against the State of Maryland.

42.     Plaintiff Kearney continues to see her psychotherapist on a regular basis and is continuing treatment for the effects that all named Defendant's actions had on her emotional and psychiatric state. As of August 2, 2011, Dr. Laino reports that although Plaintiff Kearney's anxiety as a result of her prior sexual harassment is abating in both her work and personal lives, Plaintiff is still suffering from fear of being ridiculed at work for reporting her complaint and she subjectively perceives herself to have poor job

performance as well as feelings of insecurity at work regarding her performance on the job.

## COUNT I – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST JEFFREY JOSEPH COOKE

Plaintiff Melissa Kearney, by her attorneys Shaun F. Owens, Esquire, and Schlachman, Belsky & Weiner, P.A., hereby sues Defendant Jeffrey Joseph Cooke for intentional infliction of emotional distress and incorporates paragraphs 1 through 42 above as if fully set forth herein, and further states as follows:

43.     Plaintiff Kearney had difficulties with Defendant Cooke since December 2009, including but not limited to Cooke stealing personal property of Kearney's, Cooke insinuating that Kearney is a "fucking whore" and/or that she engages in inappropriate sexual acts with co-workers and/or offenders, stalking Kearney's whereabouts, spreading rumors regarding Kearney's on the job performance, threatening to harm Kearney's employment status and making disparaging remarks about the way she dressed and acted.

44.     Cooke was aware that his actions caused Kearney emotional distress as Kearney reported Cooke's actions to her supervisors on multiple occasions. Cooke was aware of this fact because he was given various warnings that his behavior had to improve, and he even admitted as much to Plaintiff on multiple occasions.

45.     Cooke was also aware that Kearney was of a fragile emotional character due to the fact that Kearney continually asked Cooke to stop harassing and stalking her. On February 24, 2010, Defendant Cooke even apologized for calling Plaintiff a "fucking whore" because he realized it was wrong and hurtful, and he stated that he only wanted the best for Plaintiff.

46.     Cooke's conduct was both extreme and outrageous, beyond all possible bounds of decency, and would be regarded as atrocious, and utterly intolerable in a civilized society. No person has the right to threaten another, especially while stalking and/or cornering that person in their workplace and threatening that they could cause them to lose their livelihood. Further, it is outrageous to spread false rumors regarding alleged inappropriate sexual contact such that all of Plaintiff Kearney's co-workers become aware of the alleged activity. Finally, Defendant Cooke showed a deliberate disregard for Plaintiff Kearney's well-being by continuing to stalk, threaten, and harass her even after he was aware of multiple complaints filed against him and warnings given to him for the his conduct.

47.     Given Defendant Cooke's awareness of Kearney's fragile mental state from their past interactions, including his observations that his harassment upset Plaintiff, Defendant Cooke either knew or should have known that his actions in continuing to stalk, harass, accuse, and threaten Plaintiff over the course of nine months would cause her severe emotional distress.

48.     As a result of Cooke's intentional and extreme conduct, Kearney was caused severe stress and physical manifestations including but not limited to an elevation in blood pressure and psychotherapy for ten months that will continue into the foreseeable future. Plaintiff also has difficulty sleeping at night; frequently waking up with panic attacks as her ordeal is relived in her sleep. Plaintiff continues to have difficulty concentrating, being efficient and confident at work, and generally dealing with her co-workers and current work environment out of fear of retaliation or that Defendant Cooke will be re-introduced into her work environment.

11

49.     This amount of psychical and emotional injury inflicted upon Plaintiff Kearney by Defendant Cooke is significantly beyond what any reasonable individual could be expected to endure.

50.     As a direct and proximate result of Defendant Cooke's extreme and outrageous acts, Plaintiff Kearney has suffered and will continue to suffer permanent and painful mental and emotional injuries, mental anguish, and conscious pain and suffering.

51.     As a direct and proximate result of Defendant Cooke's conduct, Plaintiff Kearney was caused to pay or became obligated to pay great sums of money for the care and treatment of her injuries.

52.     Plaintiff Kearney avers that all damages, past, present and future, were the direct and proximate result of Defendant Cooke's intentional conduct, without any negligence or want of due care on the part of Plaintiff contributing thereto.

## COUNT II – NEGLIGENT HIRING, RETENTION AND SUPERVISION AGAINST DEFENDANTS STATE OF MARYLAND AND THE MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

Plaintiff Melissa Kearney, by her attorneys Shaun F. Owens and Schlachman, Belsky & Weiner, P.A. hereby sues Defendants State of Maryland and the Maryland Department of Public Safety and Corrections for negligent hiring, retention and supervision, and incorporates paragraphs 1 through 42 above as if fully set forth herein, and further states as follows:

53.     Defendants State of Maryland and the Maryland Department of Public Safety and Corrections had a duty to use reasonable care to select, supervise, and retain an employee who was competent and fit to perform the duties of a probation officer

12

including interacting with his co-workers in a safe, non-threatening and non-abusive manner.

54.   Defendants State of Maryland and the Maryland Department of Public Safety and Corrections had knowledge that Defendant Cooke would come into frequent contact with both the public and his co-workers while performing his job duties.

55.   Defendants State of Maryland and the Maryland Department of Public Safety and Corrections had actual knowledge that Defendant Cooke was harassing and threatening Plaintiff Kearney as a result of Plaintiff Kearney's complaints to her supervisors on numerous occasions, including but not limited to a formal complaint to Defendant Lutz in or around March 2010, and a formal complaint to the EEO on or about September 8, 2010.  Defendants State of Maryland and the Maryland Department of Public Safety and Corrections were also on notice of Defendant Cooke's conduct as a result of Hays' February 24, 2010 complaint alleging harassment of both him and Plaintiff Kearney.

56.   As early as April 27, 2010, Plaintiff Kearney's supervisor, Defendant Lutz, confirmed that Defendant Cooke had an on-going conflict with Plaintiff and that Defendant Cooke needed to change his behavior going forward.

57.   In issuing the April 24, 2010 notice to Plaintiff Kearney and Defendant Cooke that no action would be taken, Defendants State of Maryland and the Maryland Department of Public Safety and Corrections had not fully and vigorously investigated Plaintiff's complaint as they did not interview either party or the principal witness to the incidents, co-worker Walter Hays, in person and merely took a written statement from Plaintiff Kearney.

13

58.     As a result, Plaintiff Kearney was forced to undergo continued abuse and threats from Defendant Cooke for another six (6) months until a more thorough EEO investigation substantiated Plaintiff's claims and Defendant Cooke's employment location was modified.

59.     As a result of Plaintiff Kearney's numerous complaints to her supervisors, Walter Hays' complaint to his supervisors and Plaintiff Kearney's formal complaint to Defendant Lutz, Defendants State of Maryland and the Maryland Department of Public Safety and Corrections either knew or should have known that Defendant Cooke was harassing and threatening Plaintiff Kearney. With the aforesaid knowledge, it was unreasonable for Defendants State of Maryland and the Maryland Department of Public Safety and Corrections to refuse to take action to protect Plaintiff Kearney by removing Defendant Cooke from the work environment.

60.     As a direct and proximate result of Defendant Defendants State of Maryland and the Maryland Department of Public Safety and Corrections negligence, Plaintiff Kearney has suffered and will continue to suffer permanent and painful mental and emotional injuries, mental anguish, and conscious pain and suffering.

61.     As a direct and proximate result of Defendant Defendants State of Maryland and the Maryland Department of Public Safety and Corrections negligence, Plaintiff Kearney was caused to pay or became obligated to pay great sums of money for the care and treatment of her injuries.

62.     Plaintiff Kearney avers that all damages, past, present and future, were the direct and proximate result of Defendant Defendants State of Maryland and the Maryland Department of Public Safety and Corrections negligence, without any negligence or want

14

of due care on the part of Plaintiff contributing thereto.

**COUNT III – HOSTILE ENVIRONMENT SEXUAL DISCRIMINATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e AGAINST DEFENDANTS STATE OF MARYLAND AND THE MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**

Plaintiff Melissa Kearney, by her attorneys Shaun F. Owens, Esquire, and Schlachman, Belsky & Weiner, P.A., hereby sues Defendants State of Maryland and the Maryland Department of Public Safety and Corrections under Title VII of the Civil Rights Act of 1964, for creating and allowing to exist a hostile work environment and incorporates paragraphs 1 through 42 above as if fully set forth herein, and further states as follows:

63.     As alleged *supra*, Defendant Cooke did engage in sexually-related and gender-motivated conduct that was unwanted and unwelcome by Plaintiff Kearney, including but not limited to calling Plaintiff Kearney a "fucking whore" on multiple occasions, spreading false rumors about Plaintiff Kearney's sex life, giving her unwelcome hugs, and making disparaging remarks regarding Plaintiff Kearney's physical appearance and demeanor.

64.     Defendant Cooke's conduct was sufficiently severe to alter Plaintiff Kearney's conditions of employment and create a hostile work environment.  Defendant Cooke's conduct was sufficient to adversely affect Plaintiff Kearney's work performance as an employee of the Maryland Department of Public Safety and Corrections.

65.     It is undeniable that Defendant Cooke's actions and Defendants State of Maryland and the Maryland Department of Public Safety and Corrections lack of action created an unreasonably stressful and even dangerous work environment for Plaintiff Kearney. Plaintiff feared staying after hours to conclude her work as a result of

15

Defendant Cooke's harrassment. Plaintiff found and still finds it difficult to fully concentrate while at work due to recurring thoughts of Defendant Cooke's actions and the unhelpful and unsupportive response of her office in relation to her complaints. Finally, and most importantly, Plaintiff was so traumatized by Defendant Cooke's actions and Defendants State of Maryland and the Maryland Department of Public Safety and Corrections lack of action that she was forced into intensive psychotherapeutic treatment, which she will continue to require for the foreseeable future.

66. Defendant Cooke's conduct is undoubtedly imputable to Defendants State of Maryland and the Maryland Department of Public Safety and Corrections as both were aware of Defendant Cooke's conduct as early as February 24, 2010. Plaintiff Kearney filed numerous complaints with her supervisor, David Farnan, but none were fully investigated. Further, Plaintiff's co-worker, Walter Hays, also filed reports with his supervisors stating that Defendant Cooke was threatening both himself and Plaintiff Kearney beginning on February 24, 2010. Finally, Plaintiff's supervisor, Defendant Lutz, was actually aware of the situation as she had issued a letter to both Defendant Cooke and Plaintiff Kearney on April 27, 2010, acknowledging the conflict between the parties.

67. As a direct and proximate result of Defendants State of Maryland and the Maryland Department of Public Safety and Corrections violations of Title VII, Plaintiff Kearney has suffered and will continue to suffer permanent and painful mental and emotional injuries, mental anguish, and conscious pain and suffering.

68. As a direct and proximate result of Defendant Defendants State of Maryland and the Maryland Department of Public Safety and Corrections violations of Title VII, Plaintiff Kearney was caused to pay or became obligated to pay great sums of

16

money for the care and treatment of her injuries.

69.     Plaintiff Kearney avers that all damages, past, present and future, were the direct and proximate result of Defendant Defendants State of Maryland and the Maryland Department of Public Safety and Corrections violations of Title VII, without any negligence or want of due care on the part of Plaintiff contributing thereto.

**COUNT IV – VIOLATION OF 42 U.S.C. § 1983 AGAINST DIANE LUTZ IN HER INDIVIDUAL CAPACITY**

Plaintiff Melissa Kearney, by her attorneys Shaun F. Owens, Esquire, and Schlachman, Belsky & Weiner, P.A., hereby sues Defendant Diane Lutz in her individual capacity for violations of 42 U.S.C. § 1983 and incorporates paragraphs 1 through 42 above as if fully set forth herein, and further states as follows:

70.     Defendant Lutz was acting in her scope of employment, under color of State law, when she issued a report on April 27, 2010 without taking action against Defendant Cooke where she did not fully and vigorously investigate Plaintiff Kearney's claims of sexual abuse, harassments and threats. Defendant Lutz should have conducted in person interviews of Plaintiff, Defendant Cooke, witness Walter Hays and various other co-workers before issuing her report.

71.     Defendant Lutz was also acting within the scope of her employment, under color of State law, when she ignored other complaints regarding Defendant Cooke made by Plaintiff Kearney and co-worker Walter Hays.

72.     Defendant Lutz even literally laughed at Kearney's September 7, 2010 complaint, which was later corroborated by a September 19, 2010 police report and also substantiated by a September 23, 2010 EEO report.

73.     These acts constitute deprivation of Plaintiff's equal protection and due process of the law. Defendant Lutz's refusal to investigate Plaintiff's claims or take any action whatsoever against Defendant Cooke resulted in continued harassment of Plaintiff for nine months eventually driving Plaintiff into psychotherapy.

74.     While the acts were committed in Defendant Lutz's scope of employment, they were not committed pursuant to any State code, statute, policy or rule; rather they were decisions made in Defendant Lutz's individual capacity and will. In fact, it is State policy to affirmatively investigate all sexual harassment claims, and Defendant Lutz's actions were in violation of policies of the State. As such, Defendant's actions are properly characterized as actions taken within Defendant's individual capacity as a State official or employee.

75.     As a direct and proximate result of Defendant Lutz's violations of § 1983, Plaintiff Kearney has suffered and will continue to suffer permanent and painful mental and emotional injuries, mental anguish, and conscious pain and suffering.

76.     As a direct and proximate result of Defendant Lutz's violations of § 1983, Plaintiff Kearney was caused to pay or became obligated to pay great sums of money for the care and treatment of her injuries.

83.     Plaintiff Kearney avers that all damages, past, present and future, were the direct and proximate result of the Defendant Lutz's violations of § 1983, without any negligence or want of due care on the part of Plaintiff contributing thereto.

WHEREFORE, Plaintiff Melissa Kearney claims compensatory damages in the amount of **ONE HUNDRED THOUSAND DOLLARS ($100,000)** against Jeffrey Joseph Cooke, the State of Maryland, the Maryland Department of Public Safety and

Corrections, and Diane Lutz in her individual capacity, jointly and severally. Plaintiff additionally claims punitive damages in the amount of **THREE HUNDRED THOUSAND DOLLARS** ($300,000) against Jeffrey Joseph Cooke.

Shaun F. Owens
Schlachman, Belsky & Weiner, P.A.
300 East Lombard Street Suite 1100
Baltimore, MD 21202
(410) 685-2022
Counsel for Plaintiff