IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELISSA KEARNEY,

 *Plaintiff,*

   v.        Civil Action No.: ELH-12-2754

STATE OF MARYLAND, *et al.*,

 *Defendants.*

## MEMORANDUM OPINION

Melissa Kearney, plaintiff, an employee of the Maryland Department of Public Safety and Correctional Services (the "Department"), filed suit against the State of Maryland (the "State"); the Department; her supervisor, Dianne Lutz; and her co-worker, Jeffrey Joseph Cooke, defendants, based on alleged misconduct of Cooke. *See* Complaint (ECF 20).[1] In particular, she has lodged a claim against Cooke for intentional infliction of emotional distress (Count I); a claim against the State and the Department for negligent hiring, retention, and supervision (Count II); a claim of hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, lodged against the State and the Department (Count III); and claims against Lutz pursuant to 42 U.S.C. § 1983, alleging denial of due process and equal protection with respect to the investigation of plaintiff's complaints about Cooke (Count IV).

Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" ("Motion," ECF 12), along with a supporting legal memorandum ("Memo," ECF 12-1). Plaintiff opposed the Motion ("Opposition" or "Opp.," ECF 13), to which defendants replied

---

[1] Defendants removed this case from the Circuit Court for Harford County, Maryland, pursuant to 28 U.S.C. § 1441(a). *See* ECF 1. This Court exercises federal question jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331. I will discuss, *infra*, the Court's discretion under 28 U.S.C. § 1367(a) to exercise supplemental jurisdiction over the claims founded on Maryland law.

("Reply," ECF 16).  As no hearing is necessary to resolve the Motion, the Court now rules pursuant to Local Rule 105.6.

For the reasons that follow, I will construe the Motion as a motion to dismiss and grant it with respect to plaintiff's claims under federal law, asserted in Counts III and IV.  As to Count III, I will grant plaintiff leave to amend to demonstrate that she has exhausted her administrative remedies, as required by Title VII.  Count IV will be dismissed with prejudice.  Given my ruling at to Counts III and IV, I will deny the Motion with respect to Counts I and II, which present claims under Maryland common law, without reaching the merits.  In the event that plaintiff amends her suit to satisfy Title VII's exhaustion requirement, I will consider a renewed motion as to Counts I and II.  On the other hand, if plaintiff cannot satisfy the exhaustion requirement, a remand of Counts I and II to the State court may be appropriate.  *See* 28 U.S.C. § 1367(c)(3).

## Factual Background[2]

The Department is an agency of the State.  Plaintiff is an employee of the Department's Division of Parole and Probation (the "Division") at its office in Aberdeen, Maryland.  Compl. ¶¶ 4-5.  Cooke was plaintiff's co-worker at the Aberdeen office until September 2010.  *Id.* ¶ 6.[3] The Complaint includes a lengthy list of alleged acts of harassment by Cooke over a two-year period, beginning in December 2008 and ending in September 2010.

On December 30, 2008, Cooke "stole Plaintiff Kearney's cellular phone" from her office desk.  *Id.* ¶ 11.  He used it to access plaintiff's "private text (SMS) messages."  *Id.*

On January 4, 2010, Cooke called plaintiff a "fucking whore" and a "liar" because

---

[2] The Court construes the facts alleged in the light most favorable to plaintiff.  *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] The Complaint does not specify plaintiff's position of employment.  Nor does plaintiff refer to Cooke as her supervisor or an employee superior to plaintiff.

plaintiff had failed to respond to a phone call from Cooke made earlier that day. *Id.* ¶ 12. Also on January 4, 2010, Cooke "improperly accessed" plaintiff's account on Facebook.com, and changed plaintiff's password "without her knowledge, permission, or consent." *Id.* ¶ 13.

Cooke entered plaintiff's office at about 5:15 p.m. on the evening of February 24, 2010, and "cornered" her. *Id.* ¶ 14. According to the Complaint, "Cooke accused Plaintiff Kearney of making false accusations about him." *Id.* When plaintiff asked Cooke to leave her office, Cooke again called her a "fucking whore" and "threatened to file fallacious charges against" her, which Cooke claimed would deprive plaintiff of "a roof over [her] head." *Id.* Cooke told plaintiff that he had "access" to her office key and a key to her "personal filing cabinet." *Id.* After Cooke left, plaintiff called her co-worker, Walter Hays, who escorted plaintiff to her car. *Id.* ¶ 15.

Thereafter, plaintiff "initiated a complaint against Defendant Cooke with her supervisor, Defendant Diane Lutz." *Id.* ¶ 16.[4] Lutz "was responsible for taking disciplinary action regarding [plaintiff's] work-related complaints." *Id.* ¶ 7. Lutz did not interview plaintiff, although Lutz took "a written personnel statement" from plaintiff. *Id.* ¶ 16. On April 27, 2010, Lutz "concluded, without vigorous investigation, that no sexual or other type of harassment had occurred." *Id.*[5] Lutz also concluded that Cooke and Kearney "had an on-going conflict and that both should act in a more professional manner while at the workplace." *Id.* No disciplinary action was taken against Cooke. *Id.*

Hays also "filed a complaint with his supervisors regarding Defendant Cooke's behavior towards, and harassment of Kearney." *Id.* ¶ 17. However, "Lutz failed to pursue any reasonable investigation into Hays' complaint." *Id.*

---

[4] The Complaint does not specify the date on which plaintiff lodged her complaint.

[5] The Complaint does not indicate whether the conclusions of April 27, 2010, were oral or written.

3

Plaintiff alleges that, on the morning of July 9, 2010, Cooke "insinuated" that plaintiff "was having sexual relations" with two Maryland State Police officers visiting the office by asking: "[A]re they friends of yours?" *Id.* ¶ 18. A co-worker was present when he made that statement. *Id.* Later that day, Cooke "harassed" plaintiff "about her physical appearance, including the style of her clothes and the way she had done her make-up that day." *Id.* ¶ 19. Cooke then hugged plaintiff, "without her consent." *Id.*

On or about July 15, 2010, Cooke called plaintiff on her cell phone and "threatened that she was going to get into trouble" because Cooke had "reported that Plaintiff was on her personal cellular phone during work hours." *Id.* ¶ 20. On or about July 16, 2010, Cooke allegedly told plaintiff's co-worker, Eve Jacobs, that plaintiff was a "fucking whore." *Id.* ¶ 22. Also on July 16, 2010, plaintiff's co-worker, Dave Farnan, told plaintiff that her complaints about Cooke had been "'blocked' by upper level management," including Lutz. *Id.* ¶ 21.

On the afternoon of September 7, 2010, Cooke and another Division employee, Kirk Everetts, "approached Plaintiff while she was talking to a probationer, Mr. Rodney Maenner." *Id.* ¶ 23. As Cooke and Everetts walked by, Cooke announced that plaintiff "screws offenders." *Id.* Shortly thereafter, Cooke walked past plaintiff's office while he was talking on his cell phone. *Id.* ¶ 24. Cooke "again made a statement insinuating that Plaintiff had inappropriate relations with 'offenders' and with 'Kirk's offender [Rodney Maenner]' in particular." *Id.* (alteration and quotation marks in Complaint). Immediately afterwards, plaintiff called Lutz to inform her of Cooke's statements. *Id.* ¶ 25. Although plaintiff was "audibly upset and scared," Lutz "giggle[d]" in response to the call, and did not indicate that she would investigate the incident. *Id.* Plaintiff also filed a police report against Cooke based on his statements. *Id.* ¶ 26.

Plaintiff filed a "complaint of discrimination" with the Department's "Equal Employment

Opportunity Office" on or about September 8, 2010. *Id.* ¶¶ 28-29, 55. On September 23, 2010, the Equal Employment Opportunity Office "confirm[ed] that [plaintiff's] sexual discrimination complaint had been substantiated and that appropriate actions were being taken" by the Department. *Id.* ¶ 30. As a result of plaintiff's complaint, "Cooke was transferred to the [Division's] Bel Air office." *Id.* ¶ 31.

According to plaintiff, the Bel Air office has "extensive contact" with the Aberdeen office. *Id.* Plaintiff avers that, "from time to time, [she] may have indirect contact with Defendant Cooke," and that she "is still required to interact with Defendant Cooke on a routine basis." *Id.* ¶¶ 31-32. Additionally, she alleges that "the situation" between herself and Cooke is "well known" in her office, which has "strained [her] office relations . . . in general." *Id.* ¶ 32.

Plaintiff began "intensive psychotherapy" on October 5, 2010, and "continues to see her psychotherapist on a regular basis." *Id.* ¶¶ 33, 42. She has told her psychotherapist, *inter alia*, that she "feared for her physical safety" as a result of Cooke's behavior, *id.* ¶ 33; that she "felt anxious about going to work because it was an unsafe environment for her," *id.* ¶ 34; that she "often wakes up in the middle of the night with feelings of anxiety about her work situation," *id.* ¶ 35; and that "the mere mention of the name 'Jeff'[6] in her office causes [her] to become anxious and lose control of her emotions." *Id.* ¶ 39. According to the Complaint, plaintiff's psychotherapist "reports that although [plaintiff's] anxiety . . . is abating in both her work and personal lives, Plaintiff is still suffering from fear of being ridiculed at work for reporting her complaint and she subjectively perceives herself to have poor job performance as well as feelings of insecurity at work regarding her performance on the job." *Id.* ¶ 42.

---

[6] As noted, Cooke's first name is Jeffrey.

**Standard of Review**

Defendants seek dismissal of plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see, e.g., Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (applying *Twombly* plausibility standard).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 554-55. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of the rule, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (brackets in original) (internal quotation marks omitted). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Id.* at 555.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, the court is not

required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009).  And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citation omitted).

As to Count III, defendants have moved to dismiss or, in the alternative, for summary judgment, claiming that plaintiff failed to exhaust administrative remedies before filing suit.  In support, they rely on the Affidavit of Paula Green-Holt, the Deputy Executive Director of the Department's "Equal Employment Opportunity Division." ("Green-Holt Aff.," ECF 12-2).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  Generally, if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Under controlling Fourth Circuit precedent, "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009).  Therefore, defendants' challenge on the basis administrative exhaustion is properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure, authorizing dismissal for lack of subject matter jurisdiction.

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four

corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001). This case presents a factual challenge, because defendants rely on the facts set forth in the Green-Holt Affidavit.

In a factual challenge to subject matter jurisdiction, "the plaintiff bears the burden of proving" that subject matter jurisdiction is satisfied "by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.), *cert. denied*, 558 U.S. 875 (2009). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). Moreover, the district court is "entitled to decide disputed issues of fact with respect to subject matter jurisdiction," *Kerns*, 585 F.3d at 192, "[u]nless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute.'" *Vuyyuru*, 555 F.3d at 348 (citation omitted). Of import here, "the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits." *Id.*[7] Therefore, as to Count III, I will consider the Green-Holt Affidavit, without applying the summary judgment standard.

### Discussion

#### A. Hostile Work Environment

In Count III, plaintiff asserts a claim under Title VII for hostile work environment based on Cooke's "gender-oriented and sexually-motivated conduct." Compl. ¶ 63. A claim of hostile

---

[7] When appropriate, the court may also "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *accord Kerns*, 585 F.3d at 192. Here, plaintiff has not contested defendants' evidence of failure to exhaust, *i.e.*, the affidavit. As a result, plaintiff has not raised a factual dispute that necessitates a hearing.

work environment is premised on the notion that "an employee's work environment is a term or condition of employment." *EEOC v. Central Wholesalers, Inc.,* 573 F.3d 167, 174 (4th Cir. 2009) (internal citations and quotation marks omitted). To state a claim for hostile work environment, "'a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex . . . , (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer.'" *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.) (citation omitted), *cert. denied*, ___ U.S. ____, 132 S. Ct. 398 (2011); *see Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011).

Notably, an employer's liability for workplace harassment "may depend on the status of the harasser." *Vance v. Ball State Univ.*, ___ U.S. ____, 133 S. Ct. 2434, 2439 (2013). As in this case, "[i]f the harassing employee is the victim's co-worker, then the employer is liable only if it was negligent in controlling working conditions." *Id.* An employer may be liable in negligence "if it knew . . . about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 334 (4th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1177 (2004); *see E.E.O.C. v. Xerxes Corp.* 639 F.3d 658, 669 (4th Cir. 2011). By comparison, "strict liability" may attach to the employer if the harasser is a "supervisor" and the harassment "culminates in a tangible employment action." *Vance*, 133 S. Ct. at 2439.

In assessing whether conduct was sufficiently severe and pervasive so as to trigger liability, the Court must "look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citations and internal quotation marks omitted). Notably, "[t]his element of a hostile work environment claim

has both subjective and objective components." *E.E.O.C. v. Central Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-23 (1993)). A plaintiff must show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Central Wholesalers*, 573 F.3d at 175. Put another way, a jury must be able to find that a *reasonable person* would have found the harassment so severe and pervasive as to alter the terms and conditions of employment.

As noted, defendants contend that plaintiff's claim is barred because she failed to exhaust her remedies. As a prerequisite to filing suit under Title VII, a plaintiff must file a "charge" of discrimination with the Equal Opportunity Employment Commission ("EEOC") or, in a "deferral" jurisdiction,[8] with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). As the Fourth Circuit explained in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406 (4th Cir. 2013): "An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *See also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights ("MCCR"), formerly known as the Maryland Commission on Human Rights, is the applicable state enforcement agency. *Prelich*, 813 F. Supp. 2d at 661; *see* 29 C.F.R. § 1601.74 (listing qualifying state enforcement agencies).

Title VII prescribes the time by which a claim must be filed. In a deferral jurisdiction, the limitations period is 300 days after the alleged unlawful employment practice occurred;

---

[8] States that have a law prohibiting employment discrimination on the same bases that are covered by the federal statutes and authorizing a state or local agency to grant or seek relief from such discrimination are called "deferral" jurisdictions. *See* 42 U.S.C. § 2000e-5(c), (d); *e.g.*, *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011).

otherwise, the period is 180 days. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Chacko*, 429 F.3d at 508; *Prelich*, 813 F. Supp. 2d at 661-62.

In *Balas*, 711 F.3d at 406-07, the Fourth Circuit summarized the two principal purposes of Title VII's exhaustion requirement.

> "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'" *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)). The filing of an administrative charge, therefore, "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice.

Defendants maintain that plaintiff's Title VII claim must be dismissed because, as evidenced by the Green-Holt Affidavit, plaintiff "filed no charge of discrimination with the State or federal fair practices agencies." Memo at 16. Green-Holt avers: "If an external charge of discrimination has been filed by an employee of the Department with either the EEOC or MCCR, it is common procedure for that agency to notify our office of the filing of an external complaint." Green-Holt Aff. ¶ 3. She states that the EEO Division's "records reflect that Ms. Kearney has not filed a complaint of discrimination with either the EEOC or MCCR." *Id.* ¶ 4.

Citing pages seven, eight, and thirteen of her Complaint, plaintiff counters: "She filed a charge with the EEOC on or about February 8, 2010,[9] which was sustained, and the only form of relief she received was Defendant Cooke's transfer to another office." Opp. at 10. However, the relevant paragraphs of the Complaint reflect that plaintiff did not file a charge with the *EEOC*. Instead, she filed it with the Department's *EEO Division*. *See* Compl. ¶ 28 (alleging that

---

[9] Presumably, plaintiff meant September 8, 2010, which is the date specified in the Complaint. *See* Compl. ¶ 55. Most of plaintiff's allegations refer to events that took place after February 8, 2010.

plaintiff "contacted . . . the Department of Public Safety and Correctional Services Equal Opportunity Office ('EEO')"); *id.* ¶ 29 (alleging that the "Executive Director of EEO confirmed receipt of Plaintiff's Complaint of discrimination"); *id.* ¶ 30 (alleging that "the EEO wrote to Plaintiff Kearney confirming that her sexual discrimination complaint had been substantiated and that appropriate actions were being taken" by the Department); *id.* ¶ 55 (noting plaintiff's "formal complaint to the EEO").

The Green-Holt Affidavit plainly shows that the EEO Division is not part of the EEOC or MCCR. Moreover, the EEO Division is not listed at 29 C.F.R. § 1601.74 as a qualifying state enforcement agency.[10]

According to Green-Holt, the EEO Division "is charged with investigating internal complaints of discrimination filed by employees of the Department *under its anti-discrimination policy* and with coordinating responses to *external charges of discrimination filed by Department employees with the federal Equal Employment Opportunity Commission . . . and the Maryland Commission on Civil Rights.*" Green-Holt Aff. ¶ 2 (emphasis added). Because the EEO Division is neither the EEOC nor a state or local agency authorized to enforce "State or local law[s] prohibiting the unlawful employment practice[s] alleged," a complaint filed with it does not satisfy Title VII's exhaustion requirement. *See* 42 U.S.C. § 2000e-5(c), (d); *cf. Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752-53 (D.C. Cir. 1998) (holding that employee's filing of internal discrimination complaint with Washington Metropolitan Area Transit Authority did not satisfy Title VII exhaustion requirement).

Plaintiff has not alleged or shown that she filed a charge with the EEOC or the MCCR, in addition to the EEO Division. Additionally, it appears that the period allowed under 42 U.S.C. §

---

[10] The Court may take judicial notice of the Code of Federal Regulations. 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed . . . .").

2000e-5(e)(1) to file a charge of discrimination has expired.  As plaintiff has not alleged or shown that she satisfied the administrative exhaustion requirement of Title VII before filing suit, I must dismiss Count III.  However, I will grant plaintiff leave to amend in order to permit her to show that she has satisfied the exhaustion requirement.[11]

### B. 42 U.S.C. § 1983

In Count IV of her Complaint, plaintiff lodges a claim against Lutz under 42 U.S.C. § 1983, in her individual capacity, for "deprivation of Plaintiff's equal protection and due process of law." Compl. ¶ 73.[12]  It is well established that "the Equal Protection and Due Process Clauses of the Fourteenth Amendment . . . afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119-20 (1992).  To state a claim under § 1983, a plaintiff must: (1) "allege the violation of a right secured by the Constitution and laws of the United States"; and (2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ___ U.S. ____, 132 S. Ct. 112 (2011); *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988).

Here, plaintiff alleges that Lutz, while "acting within the scope of her employment [and] under color of State law . . . did not fully and vigorously investigate Plaintiff Kearney's claims of sexual abuse, harassment and threats."  Compl. ¶ 70.  She maintains that Lutz "should have

---

[11] In view of the dismissal, I decline to address defendants' alternative argument that Count III fails to state a claim on the facts alleged.  *See* Memo at 16-19.

[12] The State's defense of sovereign immunity, as secured by the Eleventh Amendment, precludes plaintiff from suing Lutz for money damages in her official capacity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

conducted in person interviews of Plaintiff, Defendant Cooke, witness Walter Hays and various other co-workers before issuing her report." *Id.* Further, she avers that Lutz "ignored other complaints regarding Defendant Cooke made by Plaintiff Kearney and co-worker Walter Hays," *id.* ¶ 71, and laughed in regard to Kearney's phone call of September 7, 2010. *Id.* ¶ 72. According to plaintiff, "[t]hese acts constitute deprivation of Plaintiff's equal protection and due process of the law," and "resulted in continued harassment of Plaintiff for nine months eventually driving Plaintiff into psychotherapy." *Id.* ¶ 73.

Defendants counter that Lutz is entitled to qualified immunity from suit. The doctrine of qualified immunity shields government officers from liability under 42 U.S.C. § 1983 for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, it protects government officers from liability "'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir.) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)), *cert. denied*, ___ U.S. ____, 133 S. Ct. 789 (2012).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, "officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful" will be entitled to immunity from suit. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir.) (en banc), *cert. denied*, 132 S. Ct. 781 (2011); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

The qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right," *Saucier,* 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant,* 677 F.3d at 662 (citation omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236; *see also Merchant,* 677 F.3d at 661 (stating that the "two inquiries . . . may be assessed in either sequence").

Here, defendants concentrate on the first inquiry. They assert that the facts alleged, taken in the light most favorable to plaintiff, do not establish a constitutional violation. In particular, they contend that plaintiff's allegations as to Lutz's investigation fail to state a claim for a deprivation of procedural due process, substantive due process, or equal protection. *See* Memo at 19-21. I agree.

1. Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Courts have long recognized that "the fundamental requisite of due process of law is [notice and] the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394 (1914); *see LaChance v. Erickson,* 522 U.S. 262, 266 (1998) ("[T]he core of due process is the right to notice and a meaningful opportunity to be heard."); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S.

306, 314 (1950) (observing that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  Yet "'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'"  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Rather, it "is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988).

It is axiomatic that, in order to state a claim for a due process violation, a plaintiff's allegations must implicate a protected liberty or property interest.  *Guerra v. Scruggs*, 942 F.2d 270, 277 (4th Cir. 1991); *see, e.g.*, *Mallette v. Arlington Cnty. Empls. Supplemental Retirement Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996) ("[Plaintiff] is entitled to procedural due process only if she holds a constitutionally protected property interest . . . ."); *see also Morrissey*, 408 U.S. at 481 ("Once it is determined that due process applies, the question remains what process is due.").  Plaintiff does not specify whether her interest in the investigation of her workplace harassment complaints constitutes a liberty interest or a property interest.  In either case, however, she fails to state a viable § 1983 claim.

"Liberty," within the meaning of the Due Process Clause, includes the right of "'an individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'"  *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1293)).  Courts have acknowledged a public employee's liberty interest in "his reputation and choice of occupation," *Ridpath v. Bd. of*

*Governors Marshall Univ.*, 447 F.3d 292, 307 (4th Cir. 2006), and due process may require notice and a hearing before an employee is deprived of these interests. *See Roth*, 408 U.S. at 573 & n.12 (recognizing that notice and hearing would have been required if "[t]he State, in declining to rehire the respondent, [had made] any charge against him that might seriously damage his standing and associations in his community" or had "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities"). However, the Fourth Circuit has rejected the existence of a due process liberty interest in investigative procedures. *See Weller v. Dep't of Social Servs. for City of Balt.*, 901 F.2d 387, 392 (4th Cir. 1990) (holding that a father had "no property or liberty interest in the specific investigative procedures" mandated by Maryland law "prior to removing [his] child from [his] home to prevent child abuse," and "therefore no due process claim can rest upon the state's failure to conduct them").

Any particularization of a liberty interest is noticeably absent from plaintiff's Complaint as well as her brief. Indeed, plaintiff has offered no authority to suggest that her allegations establish a deprivation of a due process liberty interest, and I have located none. To be sure, viewed in the light most favorable to plaintiff, Lutz's allegedly inadequate investigation may have prolonged Cooke's harassment of plaintiff. But, plaintiff does not allege, or even argue, that she suffered serious stigma or could not continue her chosen occupation as a result. Rather, she continued her employment with the Department. Therefore, I conclude that plaintiff has failed to assert a cognizable liberty interest.

To succeed in an action alleging a denial of procedural due process, in violation of a property interest, a plaintiff must demonstrate that she had a protected property interest, that she was deprived of that interest, and that she was afforded less procedure than was due. *See Tulsa*,

*supra*, 485 U.S. at 484-86; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985). Plaintiff has failed to identify a due process property interest.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Roth*, 408 U.S. at 576. A protected property interest can take a number of forms, and does not hinge on monetary benefits. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 574 (1974) (recognizing procedural due process violation as to students suspended for 10 days without a hearing); *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974) (same, as to prisoners' loss of good time credit); *Morrissey*, 408 U.S. at 481-84 (same, as to revocation of parole). In certain circumstances, a public employee may have a protected property interest in his or her employment. *See Roth*, 408 U.S. at 576-77 (citing, *inter alia*, *Slochower v. Bd. of Higher Educ. of City of New York*, 350 U.S. 551 (1956); *Wieman v. Updegraff*, 344 U.S. 183 (1952)).

However, the Supreme Court has identified important limitations on property interests. In *Roth*, 408 U.S. at 577, the Court explained: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Accordingly, "a property right cannot emanate from a mere subjective expectancy." *Guerra*, 942 F.2d at 278 (citing *Perry v. Sinderman*, 408 U.S. 593, 603 (1972)). In other words, a person does not acquire a property interest through "an abstract need or desire" or "a unilateral expectation"; a person "must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

A variety of benefits under federal and state statutes have been held to constitute "property" subject to procedural due process requirements. In *Goldberg v. Kelly*, 397 U.S. 254,

261-62 (1970), for example, the entitlement to welfare benefits pursuant to federal and state programs was held to be "property," and such benefits could not be stopped without a pre-termination hearing. In *Bell v. Burson*, 402 U.S. 535, 539-540 (1971), the Supreme Court determined that, for due process purposes, entitlement to a driver's license under state law was "property." In *Goss v. Lopez*, 419 U.S. at 576, the Court held that a pupil's interest in attending public school amounted to a "property" interest, and the pupil could not be suspended, absent some form of notice and hearing. Similarly, in *Mathews v. Eldridge*, *supra*, 424 U.S. at 332, the Court held "that the interest of an individual in continued receipt of [social security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment."

But, I am unaware of any authority indicating that an employee possesses a constitutionally protected property interest in a particular investigative process for workplace complaints. *See, e.g.*, *David v. Dallas Ind. Sch. Dist.*, 448 F. App'x 485, 495 (5th Cir. 2011) (rejecting plaintiff's asserted property interest "in a certain 'investigation' or investigative procedure" because "Texas courts have consistently concluded that procedural regulations (or an agency's failure to follow those procedures) do not themselves give rise to a property right"); *Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 816 (3d Cir. 2010) (holding that because plaintiff "identifie[d] no statutory or regulatory requirement mandating that the university follow a given set of investigative procedures," she had "no constitutionally protected life, liberty, or property interest in 'proper' university investigative procedures").

State law may provide a source for the existence of a due process property interest. Yet, Maryland law presents a significant obstacle to plaintiff's claim. This is because Maryland appellate courts have declined to recognize "a Constitutionally-based property interest entitlement to mere procedure." *Wells v. State*, 100 Md. App. 693, 712, 642 A.2d 879, 888

(1994); *see also Weller*, 901 F.2d at 392 (rejecting property interest in state-mandated investigative procedures).

In *Wells*, for example, the plaintiff asserted that "Maryland law 'mandates that officials and employees follow guidelines and take affirmative actions to ensure the well-being of and to promote the welfare of children threatened by abuse and neglect.'" *Id.* at 711, 642 A.2d at 888 (quoting complaint). The plaintiff complained that State officials had "failed to follow statutory and regulatory requirements governing the investigation of reported abuse or neglect and the monitoring of [plaintiff's] children's safety." *Id.* In other words, the plaintiff asserted "an entitlement to have the procedures created by the law followed." *Id.* The Maryland Court of Special Appeals rejected the plaintiff's due process claim, stating: "The violation of State-mandated procedures may well give rise to an action under State law, if the appropriate preconditions to such an action are followed, but it does not constitute a deprivation of property without due process of law." *Id.* at 712-13, 642 A.2d at 888.

Citing the Maryland Code (2009 Repl. Vol., 2012 Supp.), § 11-106 of the State Personnel & Pensions Article ("S.P.P."), plaintiff argues: "Maryland requires that the appointing authority shall investigate alleged misconduct before taking any disciplinary action related to said misconduct." Opp. at 12. S.P.P. § 11-106 states, in pertinent part: "Before taking any disciplinary action related to employee misconduct, an appointing authority shall: investigate the alleged misconduct . . . ." Plaintiff also cites *Danaher v. Department of Labor, Licensing & Regulations*, 148 Md. App. 139, 811 A.2d 359 (2002), in which the Maryland Court of Special Appeals said: "[T]he State has obligations under S.P.P. § 11–106, to conduct itself in such a way so as to ensure that the appointing authority has all relevant information before making a decision to terminate or otherwise discipline an employee." *Id.* at 173, 811 A.2d at 379.

Plaintiff's reliance on S.P.P. § 11-106 and *Danaher* is misplaced, however. *Danaher* involved an employee who was terminated for misconduct, and is factually inapposite. *See* 148 Md. App. at 146-55, 811 A.2d at 363-69. As the Fourth Circuit has observed, "Maryland courts have clarified that the procedural protections of S.P.P. § 11-106 apply *only when an employee is discharged for misconduct* and that the *Danaher* decision should be so limited." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008) (holding that because employee was not discharged for misconduct, she was not entitled to procedural protections of S.P.P. § 11-106) (emphasis added) (citing *Pub. Serv. Comm'n v. Wilson*, 389 Md. 27, 82-86, 882 A.2d 849, 882-84 (2005); *Dozier v. Dep't of Human Res.*, 164 Md. App. 526, 536-37, 883 A.2d 1025, 1031 (2005)).

No disciplinary action was taken in this case against plaintiff. Therefore, neither S.P.P. § 11-106 nor *Danaher* secures an interest in a "full[] and vigorous[]" investigation of plaintiff's workplace harassment complaints; these authorities do not support her alleged procedural due process violation in this case.

In *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) (internal citations and quotation marks omitted), the Supreme Court stated:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

This principle applies here. Plaintiff has not identified a protected liberty or property interest in the full and vigorous investigation of her harassment complaints. Therefore, even assuming, *arguendo*, that Lutz did not investigate adequately plaintiff's complaints, plaintiff has failed to state a claim for relief for a violation of procedural due process.

2. Substantive Due Process

Plaintiff's Complaint does not support a claim for the denial of substantive due process. To maintain such a claim, a plaintiff must show that the defendant's conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see Huggins v. Prince George's Cnty.*, 683 F.3d 525, 535 (4th Cir. 2012). The Supreme Court has cautioned: "The Due Process Clause 'does not purport to supplant traditional tort law,'" and therefore, it should not "be interpreted to impose federal duties that are analogous to those imposed by state tort law." *Collins*, *supra*, 503 U.S. at 128 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). This principle "applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." *Collins*, 503 U.S. at 128.

Plaintiff has not offered any argument or authority to support a substantive due process right to a particular type or quality of an investigation of workplace misconduct. Even if Lutz's handling of plaintiff's complaints were inadequate, and her alleged laughter was insensitive, such conduct was not so egregious as to "shock the conscience."

Moreover, even if Lutz's alleged inaction prolonged plaintiff's exposure to Cooke's harassment, the Supreme Court has held that substantive due process does not impose a constitutional duty on government employers "to provide its employees with a safe working environment." *Collins*, 503 U.S. at 126 (rejecting the contention that a city employer "violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security" by, *inter alia*, failing to train its employees and failing to warn them about known risks of harm); *accord Doe ex rel. Johnson v. S.C. Dep't of Social Servs.*, 597 F.3d 163, 170 (4th Cir.) ("As a general rule, 'the Due Process Clause works only as a negative prohibition on state

action.'") (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995) (en banc)), *cert denied*, ___ U.S. ____, 131 S. Ct. 392 (2010).  Nor does the Due Process Clause offer "a guarantee against incorrect or ill-advised personnel decisions."  *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

In *Deshaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989), the Supreme Court said:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.  Nor does history support such an expansive reading of the constitutional text.

Accordingly, plaintiff has failed to state a claim for violation of substantive due process.

3.  <u>Equal Protection</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Plyler v. Doe*, 457 U.S. 202, 216 (1982).  Equal protection is "concerned with governmental classifications that 'affect some groups of citizens differently than others.'"  *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 597 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).  Although "[t]he Equal Protection Clause was intended as a restriction on state *legislative* action," *Plyler*, 457 U.S. at 216 (emphasis added), "States do not escape the strictures of the Equal Protection Clause in their role as employers."  *Engquist*, 553 U.S. at 597.  Accordingly, "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context,

treating distinct groups of individuals categorically differently." *Id.* at 605.

Plaintiff has not responded to defendants' Motion with respect to her equal protection claim. Therefore, the claim has been abandoned. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim.").

In any event, to survive a Rule 12(b)(6) motion to dismiss, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Plaintiff's conclusory allegation of an equal protection violation cannot survive defendants' Motion.

As defendants note, plaintiff does not allege that others who were in a position similar to her, but of a different sex, race, or other suspect class, were treated more favorably with respect to harassment complaints. *See, e.g.*, *Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 549 (D. Md. 2001) (dismissing equal protection claim because "there is no allegation in the complaint that plaintiff has been treated differently from a person similarly situated"). Nor does she allege that Lutz acted based on a "discriminatory purpose or motive" with respect to plaintiff's sex or race. *See Lynn v. O'Leary*, 264 F. Supp. 2d 306, 311 (D. Md. 2003).

In sum, plaintiff has failed to alleged facts that establish a constitutional violation of due process or equal protection. Therefore, Lutz is entitled to qualified immunity as to the claim under § 1983, and Count IV will be dismissed, with prejudice.

### C. State Law Claims

As indicated, this case was removed from a Maryland State court to this Court. The Complaint contains two claims based on federal law and two claims based on Maryland law. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331(a)(1),

which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). The "Supreme Court has interpreted § 1331 to require supplemental jurisdiction . . . over certain claims . . . that do not themselves give rise to federal jurisdiction." *Id.*

Section 1367(a) of Title 28 is also pertinent. It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In *ESAB*, the Fourth Circuit described the Supreme Court's traditional approach to supplemental (or "pendent") jurisdiction, *id.* (internal citations omitted):

> [S]o long as one claim in an action presented a federal question on the face of the well-pleaded complaint, a court could exercise jurisdiction over the entire constitutional case or controversy. It does not follow, however, that the federal court had original jurisdiction over the entire case; rather, it had original jurisdiction over at least one claim, allowing the exercise of supplemental/pendent jurisdiction over the remaining claims. And the Supreme Court subsequently recognized that, when the exercise of pendent jurisdiction over these claims became "inappropriate," district courts had inherent authority to remand them to state courts.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Id.* at 110; *see also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court

dismisses the claims over which it has original jurisdiction.").  Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'"  *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106).

Under well established Fourth Circuit precedent, "district courts retain inherent authority, once they have decided under § 1367(c) not to exercise jurisdiction, to remand these claims to state court."  *ESAB*, 685 F.3d at 394; *see also Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) ("[W]e conclude that under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met."); *see e.g.*, *MBC Realty, LLC v. Mayor & City Council of Baltimore*, 351 F. Supp. 2d 420, 421 (D. Md. 2005) (Davis, J.) (declining to exercise jurisdiction over supplemental state law claims after dismissing federal claim on 12(b)(6) motion, and remanding to state court).

Here, I have granted defendants' motion to dismiss as to plaintiffs' federal claims in Counts III and IV, with leave to amend as to Count III, to permit plaintiff to show that she exhausted Title VII's administrative remedies.  If plaintiff files an amended complaint that cures the jurisdictional deficiency as to Count III, I will then consider a renewed Motion as to Counts I and II.  In the absence of federal question jurisdiction, however, a remand as to the remaining claims under State law may be appropriate.

A separate Order follows, consistent with this Memorandum Opinion.


Date: August 1, 2013                 _____/s/_____
                                       Ellen Lipton Hollander
                                       United States District Judge